

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00014-CR

JOE MARK SESSUMS, JR., AKA JOE MARK SESSUMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court 2
Tarrant County, Texas
Trial Court No. 1287075D

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

# MEMORANDUM OPINION

Joe Mark Sessums, Jr., aka Joe Mark Sessums, was convicted of capital murder—causing the death of more than one person in the course of intentionally or knowingly committing murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(7) (West Supp. 2013). Sessums alleges that the State made improper statements to the jury in the closing argument. We overrule the claim of error and affirm the trial court's judgment and sentence.[1]

## I.       Background

Sessums' gang, Sur 13, was in a dispute with the 901 Bloods, another gang. The two gangs had generally co-existed on Fort Worth's south side, but tensions festered following the October 2011 gang-related murder of Sessums' cousin. On May 20, 2012, Sessums was riding in the backseat of a Chevrolet Tahoe when he fired fourteen rounds into a moving Toyota Camry driven by Fabian Guerrero. Sessums killed Guerrero and Diane Guerra, the front-seat passenger; three people riding in the back of the Camry were injured. At trial, Sessums conceded that he intended to kill Guerrero, but maintained that he did not intend to kill Guerra. Sessums acknowledged responsibility for both deaths, but argued he was not guilty of capital murder—murdering more than one person during the same criminal transaction—because he did not intentionally or knowingly kill Guerra. In short, Sessums' defense was that he was guilty of murder (for killing Guerrero), but not capital murder (for killing both Guerrero and Guerra).

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

## II. The Jury Charge

The jury was instructed that a person commits capital murder when he murders more than one person during the same criminal transaction. The jury charge defined murder as intentionally or knowingly causing the death of an individual. Proper definitions of the words "intentionally" and "knowingly" were also included in the jury charge. Additionally, the jury was instructed on the concept of transferred intent.[2] The jury charge applied these definitions and instructions to the specific facts of this case and authorized the jury to find Sessums guilty of capital murder if it found (1) that he intentionally or knowingly killed Gurrero and (2) during the same criminal transaction (a) either intentionally or knowingly caused the death of Guerra, (b) that he intended to cause the death of any individual and actually caused the death of Guerra, or (c) that he was aware that his conduct was reasonably certain to cause the death of any individual and did cause the death of Guerra. Sessums raises no issues concerning either the jury charge or the sufficiency of the evidence on appeal.[3]

## III. The Jury Arguments

In its original closing argument, the State told the jury, "The question for you is, is he responsible for the death of Diane Guerra? And I submit to you he's completely responsible for that death as well, and he's guilty of capital murder." In his closing argument, Sessums argued

---

[2]The jury charge read, "A person is criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different person was injured, harmed, or otherwise affected."

[3]The evidence would allow a jury to conclude that Sessums intended to kill members of the rival gang and that he fired fourteen rounds into their vehicle. The intent to cause more than one death of the gang members will transfer to the killing of Guerra. *See Ex parte Norris*, 390 S.W.3d 338, 341 (Tex. Crim. App. 2012); *Roberts v. State*, 273 S.W.3d 322, 331 (Tex. Crim. App. 2008) (transferred intent "may also be used if, intending to kill both Joe and Bob and being a bad shot, the defendant killed Mary and Jane").

that he was remorseful for his deadly acts and claimed that he had accepted responsibility for the acts. Sessums' attorney stated to the jury, "This young man did not intend to kill this young woman. What happened was a terrible tragedy. He's taken responsibility." Sessums then urged the jury to find him not guilty of capital murder, but of the lesser offense of murder instead. The evidence, argued Sessums, did not show beyond a reasonable doubt that he intended to cause the death of Guerra, and thus, he should not be found guilty of capital murder.[4] In rebuttal, the State made the following statement:

> This Defendant pulled the trigger on that night 14 times. He was willing to kill as many people as 14 bullets could hit. That's the truth about what happened on May 20th, 2012. And to say that he isn't responsible for Diane's death, you heard from Dr. Peerwani,[5] you heard about the damage the bullets he fired from his gun did to Diane. And to say he's not responsible? Was he shooting some special bullets that only hit boys and not girls? Come on now. He knows - -

Sessums objected, "Your Honor, I'm going to object. That's a misstatement of the facts. There's never been a claim by the Defense that he wasn't responsible, just that he did it and it wasn't proven."[6] The trial court overruled Sessums' objection. On appeal, Sessums claims the trial court erred in this ruling, and the State misstated the evidence in her summation.

"Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel;

---

[4]Sessums reached this conclusion by explaining to the jury that the State, with its "unique[] . . . ability to draft and prepare the wording of an indictment," failed to allege transferred intent in the charging instrument. However, the theory of transferred intent need not be pled in the indictment. *See Malik v. State*, 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997); *see also Norris*, 390 S.W.3d at 341; *Roberts*, 273 S.W.3d at 335 (Keller, J., dissenting).

[5]Dr. Nizam Peerwani was the medical examiner for Tarrant, Parker, Denton, and Johnson Counties. He testified that Guerra sustained two gunshot wounds a few inches apart in the back left shoulder area. One of the shots perforated her heart and was fatal.

[6]We take this last part of the sentence to mean that Sessums accepted responsibility for shooting both victims ("he did it"), but claimed that the State failed to prove him guilty of capital murder ("it wasn't proven").

or (4) a plea for law enforcement." *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000) (citing *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996)). Evidence showed Sessums had been riding in the back of a Chevrolet Tahoe with other gang members when they saw the two decedents and three others get in the Camry outside a Fort Worth eatery. Sessums' gang followed the Camry, and eventually, Sessums opened fire while the vehicles were travelling on a service road along Interstate 35 in Fort Worth. Sessums knew several persons were in the other car, and he fired fourteen rounds into the vehicle, killing the driver and a passenger.

Sessums' theory throughout trial and in his closing argument was that the jury should only convict him of murder, because Sessums only intended one death, that of Guerrero.[7] Sessums tried to walk a tightrope in urging the jury that, while he accepted responsibility for Guerra's death, he was not criminally or legally responsible for capital murder, because he did not intend to kill her. "A person acts intentionally, or with intent, with regard to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West 2011). Alternatively,

> [a] person acts knowingly . . . with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly . . . with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TEX. PENAL CODE ANN. § 6.03(b). The evidence supported a conclusion by the jury that Sessums was guilty of intentionally or knowingly killing Guerrero and that, in the same

---

[7]Sessums did not testify. His defensive theory was developed in questioning Detective Thomas O'Brien about Sessums' conduct during an interview conducted by O'Brien.

transaction, he also killed Guerra. The State's rebuttal argument was a response to the defensive argument that the jury could only convict Sessums of the lesser offense of murder because he did not intend to kill Guerra. Earlier, the State had argued that the concept of transferred intent applied as discussed in the jury charge. The State remarked, "[T]he only difference between what actually occurred and what he desired, contemplated[,] or risked is that a different person was injured, harmed[,] or otherwise affected." Here, the State was arguing that regardless of whether Sessums had the immediate intention of killing Guerra, he was criminally responsible for that murder due to the transferred intent doctrine as outlined in the jury charge. The argument was not improper, and the trial court did not err in overruling Sessums' objection. We overrule the point of error.

We affirm the trial court's judgment and sentence.


Jack Carter
Justice

Date Submitted:     July 2, 2014
Date Decided:       July 29, 2014

Do Not Publish

6